United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARLITO MENDOZA,

       Plaintiff,

       vs.

KINDRED HEALTHCARE OPERATING, INC., et al.,

       Defendants.

Case No.: 11-cv-00666-YGR

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Carlito Mendoza brings this employment discrimination, retaliation, and harassment action against Defendants Kindred Healthcare Operating, Inc., Kindred Hospitals West, LLC, and Kindred Nursing Centers West, LLC (collectively, "Defendants"). Plaintiff alleges seven claims against Defendants: (1) discrimination based on national origin (Title VII); (2) retaliation (Title VII); (3) harassment (Title VII); (4) violation of 42 U.S.C. section 1981; (5) discrimination based on national origin (California Fair Employment and Housing Act ("FEHA")); (6) retaliation (FEHA); and (9) [*sic*] harassment (FEHA). (Dkt. No. 1 ("Compl.").)

Defendants filed a Motion for Summary Judgment or, in the Alternative, Summary Adjudication on April 10, 2012. (Dkt. No. 33 ("Motion" or "Mot."); *see also* Dkt. Nos. 34–41.) The Motion is made as to all claims alleged by Plaintiff and as to Plaintiff's claim for punitive damages. On April 24, 2012, Plaintiff filed his Opposition to Defendants' Motion for Summary Judgment, or, in the Alternative, Summary Adjudication. (Dkt. No. 42 ("Opposition" or "Opp."); *see also* Dkt. Nos. 43–45, 47 & 52–53.) Defendants filed their Reply in Support of their Motion for Summary Judgment

1   on May 1, 2012.  (Dkt. No. 48 ("Reply"); *see also* Dkt. Nos. 49–50.)  On May 15, 2012, the Court

2   held oral argument on Defendants' Motion.  (Dkt. No. 54.)

3        Having carefully considered the papers submitted and the pleadings in this action, and for the

4   reasons set forth below, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

6        Plaintiff works at the Tunnell Center for Rehabilitation and Healthcare ("Tunnell") in San

7   Francisco as a Certified Nursing Assistant ("CNA").  (Dkt. No. 34, Declaration of D. Gregory

8   Valenza in Support of Defendants' Motion for Summary Judgment, Ex. A (Videotaped Deposition of

9   Carlito Mendoza ("Mendoza Dep.")) 13:25–14:25.)  Kindred Nursing Centers West, LLC operates

10  Tunnell and is Plaintiff's only employer.  Kindred Healthcare Operating, Inc. and Kindred Hospitals

11  West, LLC are related, but separate, entities from Kindred Nursing Centers West, LLC.  (Dkt. No. 38,

12  Declaration of Jeremy Ballard in Support of Defendants' Motion for Summary Judgment ¶¶ 3–5.)

13  Plaintiff has been employed continuously at Tunnell since 2002.  Muriel Han is the Executive

14  Director of Tunnell and has held that position since March 17, 2010.  (Dkt. No. 35, Declaration of

15  Muriel Han in Support of Defendants' Motion for Summary Judgment ("Han Decl.") ¶¶ 2–3.)  She

16  manages Tunnell's day-to-day operations and is its highest ranking administrator.  *Id.* ¶¶ 3–4.

17       As a CNA, Plaintiff assists patients with their daily living needs, including, for example,

18  transferring patients from their beds, feeding and bathing, assisting them with maintaining their range

19  of motion, ensuring patients are properly turned and lifted, and making sure they are clean and not at

20  risk of infection.  Mendoza Dep. 21:15–22:15 & 26:17–23.  CNAs receive "in-service" training on

21  subjects including transferring/turning patients, charting, and reporting patient abuse.  *Id.* 26:24–

22  27:13, 27:21–28:1 & 43:10–15.

23       In November 2009, a Tunnell patient complained that a CNA had slapped her in the face.

24  (Dkt. No. 37, Declaration of Cherry Bautista in Support of Defendants' Motion for Summary

25  Judgment ("Bautista Decl.") ¶ 4.)  Cherry Bautista, Tunnell's Assistant Director of Nursing Services

26  participated in the investigation of the incident, including interviewing Plaintiff and the supervising

27  nurse on duty.  *Id.* ¶ 4.  In the course of its investigation, Tunnell suspected Plaintiff in this incident

28  because he was on duty at the time of the alleged incident and took care of the complaining patient.

United States District Court
Northern District of California

*Id.* ¶ 4.  Plaintiff was suspended during the investigation into the allegations.  *Id.* ¶ 4; *see* Mendoza Dep. 76:19–23, 77:8–16 & 77:25–78:6.  Following its investigation, Tunnell was unable to substantiate the allegations because nobody witnessed the alleged abuse.  Bautista Decl. ¶ 4.

Within four months later (prior to March 2010), Plaintiff was accused of patient neglect in another incident.  Mendoza Dep. 78:7–81:3.  Specifically, a fellow CNA who worked on the same shift as Plaintiff accused him of neglecting to change a patient.  *Id.*  Tunnell investigated that accusation, during which it suspended Plaintiff for approximately two or three days.  *Id.*  Again, the incident was not substantiated.  *Id.*  The slapping and patient neglect accusations both occurred prior to when Han became Executive Director of Tunnell.  Mendoza Dep. 80:19–22 & 81:16–18; Han Decl. ¶¶ 3 & 5.

On July 28, 2010, a patient's wife reported to Han that one or two weeks prior, a CNA had handled her husband in a rough manner.  Han Decl. ¶ 14.  Han immediately began an investigation, which included interviewing the patient's wife, the patient's daughter, and Tunnell staff.  *Id.*  Han met with Plaintiff and two other CNAs who regularly worked on the second floor during the shift in which the patient's wife claimed the abuse occurred.  *Id.* ¶ 15; Mendoza Dep. 39:20–40:7.  Han requested their consent to be photographed so that the patient's wife could identify who had handled her husband roughly.  Han Decl. ¶ 15; Mendoza Dep. 40:13–24.  The CNAs stated they did not want their pictures to be taken, but agreed so they could return to work.  Mendoza Dep. 40:13–24.  They agreed to use their union steward's cell phone to take the pictures.  *Id.* 48:2–9.  Plaintiff was informed that the wife had selected him from the photographs as the person who had treated her husband in a rough manner.  *Id.* 40:8–12, 41:4–14 & 48:10–16.  Plaintiff denied the wife's complaint, which he later memorialized.  Mendoza Dep. 33:8–36:8 & Ex. 2 to Mendoza Dep.  Prior to the incident in July 2010, Plaintiff did not have any problems with the patient, the wife, or her daughter and he believed that he was the wife's favorite CNA.  Mendoza Dep. 36:18–21, 41:20–25 & 42:5–8.  He also did not have any problems with Muriel Han before this incident.  *Id.* 38:24–39:1.

On the same day that the complaint was made (July 28), Tunnell suspended Plaintiff pending investigation into the allegations.  Han Decl. ¶ 17; Mendoza Dep. 32:14–18 & 33:8–34:1.  On or about August 9, 2010, Han terminated Plaintiff's employment.  Han Decl. ¶ 19; Mendoza Dep. 45:8–

10.  Han based her decision, in part, on the patient's wife witnessing the incident, her belief that the allegations were substantiated, and that various Tunnell policies prohibited the mistreatment of patients.  Han Decl. ¶ 19.  Han also learned that Mendoza had abuse allegations made against him before.  *Id.* ¶¶ 18–19; *see* Bautista Decl. ¶ 4.  Tunnell has terminated other employees for substantiated patient abuse during Plaintiff's employment, including other Filipinos and at least one non-Filipino (Latina).  Mendoza Dep. 88:20–89:6.  In addition, Tunnell has suspended a number of employees upon allegations of abuse during Han's tenure, since March 2010.  Han Decl. ¶ 20.

On or about August 12, 2012, Tunnell offered to reinstate Plaintiff's employment.  Mendoza Dep. 45:25–46:13; Dkt. No. 36, Declaration of Shirley Faller in Support of Defendants' Motion for Summary Judgment ("Faller Decl.") ¶¶ 5–6.  As conditions of his reinstatement, Tunnell reassigned Mendoza from his 3:00 p.m. to 11:00 p.m. ("swing") shift to the day shift so that more people would be around to support and supervise him.  Mendoza Dep. 17:12–22, 49:6–16 & 65:24–66:4; Faller Decl. ¶ 6.  He was informed that any further accusations from patients would mean immediate termination.  He completed in-service training regarding abuse and dealing with difficult patients.  Mendoza Dep. 64:21–25.  Plaintiff agreed to these mandatory conditions so that he could return to work.  *Id.* 49:17–25.  Han approved Mendoza's reinstatement based, in part, on his acceptance of the conditions of his reinstatement.  Han Decl. ¶ 22.

Plaintiff bases his claims on the events in July and August 2010.  He alleges that he has been subjected to a continuing pattern of unlawful discriminatory employment practices which include:  (a) a false accusation of patient abuse in July 2010; (b) continued threats of termination of employment; (c) termination of employment on August 9, 2010, after which he was reinstated on August 12; (d) denial of employment; (e) denial of pay; (f) removal from the swing shift in August 2010 without cause or justification; and (g) continuing harassment.  (Dkt. No. 43, Declaration of Carlito Mendoza in Support of his Opposition to Defendants' Motion for Summary Judgment ("Mendoza Declaration" or "Mendoza Decl.") ¶ 6); *see* Compl. ¶ 6.  He further claims that his similarly-situated non-Filipino coworkers are not subjected to the actions and conduct that he is, including management personnel refusing to speak or be cordial to him.  Mendoza Decl. ¶ 6.  Plaintiff argues in his Opposition that Han orchestrated an "unprecedented pattern of over scrutiny and heightened criticism" against him.  Opp.

United States District Court
Northern District of California

4

at 6–7.  Han is the only person that Plaintiff believes has discriminated against him.  Mendoza Dep. 55:8–15.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission in October 2010 ("EEOC Charge"), and received a Notice of Right to Sue in November 2010.  Mendoza Dep. 85:15–25 & Ex. 9 to Mendoza Dep.

## II.      DISCUSSION

### A.      Legal Standard for Motion for Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247–48 (dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the non-moving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Id.*  If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion.  *Id.* (quoting *Anderson*, 477 U.S. at 250).  The opposing party's evidence must be more than "merely colorable" but must be "significantly probative."  *Id.* at 249–50.  Further, that party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of

United States District Court
Northern District of California

5

material fact for trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v. Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–1082 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion").

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  However, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted).  Rather, a court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *See id.*; *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.")

### B.   Motion for Summary Judgment By Defendants Kindred Healthcare Operating, Inc. and Kindred Hospitals West, LLC

Defendants assert that Kindred Nursing Centers West, LLC operates Tunnell, where Plaintiff works, and that this entity is the only entity that can be deemed Plaintiff's "employer" under Title VII and FEHA.  Mot. at 10; Reply at 3.  Kindred Healthcare Operating, Inc. and Kindred Hospitals West, LLC are separate corporations and Defendants seek dismissal of the entities.  Mot. at 10.  Plaintiff does not dispute this and dismisses these two entities from this action.  Opp. at 10 & 13.

For these reasons, the Court **GRANTS** the Motion for Summary Judgment as to Defendants Kindred Healthcare Operating, Inc. and Kindred Hospitals West, LLC and **DISMISSES** them from this action.  Because there is only one remaining party moving for summary judgment, the Court will refer to Kindred Nursing Centers West, LLC throughout the rest of this Order as "Defendant."

**C.      Motion for Summary Judgment by Kindred Nursing Centers West, LLC**

      **1.      Evidentiary Issues[1]**

            **a.      Whether Plaintiff's Declaration Was Translated and Authenticated**

Defendant contends that the Mendoza Declaration is inadmissible based on Fed. R. Evid. 602, 604 & 901(a) to the extent that it was translated for him.  Reply at 2.  Defendant notes that Plaintiff required a translator at his deposition, but that his declaration is written in English and contains strong indications that it was written by a third party.  *Id.*  Defendant asserts that witness testimony translated from a foreign language without proper authentication is inadmissible and must be excluded in considering this Motion.  *Id.*

At the hearing on this Motion, the Court asked Plaintiff's counsel about the issue of a translator.  Counsel stated that Defendant had offered to provide a Tagalog translator at Plaintiff's deposition and that Plaintiff accepted this offer because he had concerns regarding the deposition environment and felt more comfortable having one there.  Counsel further stated that Plaintiff does speak and read English "well" and that he read and understood his entire declaration.

The Court is satisfied with counsel's explanation regarding the Mendoza Declaration and overrules the objection thereto.  The Court further notes that this declaration is Plaintiff's only evidence submitted in opposition to summary judgment.[2]  But, as discussed below, even considering

---

[1] The Court struck Plaintiff's Objections to Evidence in Support of his Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 46) for failure to comply with Civ. L.R. 7-3, which requires that "evidentiary and procedural objections to [a] motion must be contained within [a] brief or memorandum."  (Dkt. No. 51.) Notwithstanding the foregoing, the Court only considers admissible, relevant evidence.

[2] Plaintiff does not rely on any of his deposition testimony in his Opposition, Response to Defendants' Separate Statement of Undisputed Facts in Support of Plaintiff's Opposition (Dkt. No. 45 ("Responsive Separate Statement")), or Amended Separate Statement of Undisputed Facts in Support of Plaintiff's Opposition (Dkt. No. 52 ("Plaintiff's Separate Statement")).  He did not attach exhibits to his declaration, or rely upon any written discovery or deposition testimony of any third party witnesses.  The Court further notes that Plaintiff's Responsive Separate Statement is rife with incorrect citations to the Mendoza Declaration.  While the failure to give proper citations to evidence in opposition to a summary judgment may result in exclusion of the evidence, the Court elects not to do so, particularly because it is Plaintiff's only evidence in opposing the Motion.  *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774–75 (9th Cir. 2002) ("The efficient management of judicial business mandates that parties submit evidence responsibly. . . . [W]hen a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court may in its discretion exclude the evidence.").  The Court has, as best it could, attempted to locate the correct citations in Plaintiff's supporting documents.

the Mendoza Declaration as admissible evidence, Plaintiff's claims fail.

To the extent that Defendant has objected to Plaintiff's counsel's "arguments" as attempting to create disputed facts (Reply at 3), the Court will address the sufficiency of Plaintiff's evidence and whether disputed material facts exist in its analysis of the claims below.

### b.   Whether the Mendoza Declaration Is a Sham Declaration

Having decided that it will consider the Mendoza Declaration as admissible evidence, the Court must address Defendant's assertion that Plaintiff improperly contradicts his deposition testimony in an attempt to create disputed facts.  Reply at 2.  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009) (quoting *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).  This rule, known as the "sham affidavit" rule, prohibits a party from creating a genuine issue of material fact by submitting a contradictory affidavit "without sufficient explanation for the contradiction."  *Martinez v. Marin Sanitary Service*, 349 F. Supp. 2d 1234, 1242 (N.D. Cal. 2004) (citing *Radobenko v. Automated Equip. Co.*, 520 F.2d 540, 544 (9th Cir. 1995)); *Nelson*, 571 F.3d at 928 (a party cannot create a "dispute with *himself* to defeat summary judgment").  However, this rule does not preclude the non-moving party from elaborating upon, explaining, or clarifying prior testimony, nor does it provide a basis to exclude an affidavit due to "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence."  *Nelson*, 571 F.3d at 928 (internal citations omitted).  While "[s]ham affidavits may be disregarded in summary judgment proceedings" (*Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 660 (N.D. Cal. 1994)), a court must exercise caution in applying this rule and make a factual determination that the contradiction was actually a "sham" (*Nelson*, 571 F.3d at 928; *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 855 (N.D. Cal. 2011)).

Although Defendant states that Plaintiff contradicts his prior deposition testimony, Defendant has not identified the precise contradictions for the Court.  But the Court has, in reviewing the briefs and Plaintiff's deposition transcript excerpts and declaration, observed that Plaintiff does appear to contradict himself in a number of ways in an attempt to create a factual dispute.  The Court will

address specific contradictions it has observed as it analyzes the evidence and claims below.

### 2. Discrimination Based on National Origin Under Title VII and FEHA (First and Fifth Claims)

Defendant contends that Plaintiff has no direct evidence of discriminatory intent and cannot establish discrimination by indirect evidence because he cannot show there was an adverse employment action or that similarly-situated non-Filipinos were treated more favorably. Mot. at 10–12. In addition, Defendant sets forth legitimate, non-discriminatory reasons for various actions taken (or alleged to have been taken) against Plaintiff. Mot. at 15–18. Specifically, Defendant provides explanations for Plaintiff's suspension, termination, move to the day shift, overtime, and vacation accrual. *Id.*

"Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a *determinative influence* on the outcome." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993) (emphasis supplied). In general, discrimination can be established in either of two ways—by direct evidence or by indirect evidence. *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985). Direct evidence is that which, if believed, proves the fact of discriminatory animus "without inference or presumption." *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (internal citations omitted).

A plaintiff may prove discrimination by using indirect, or circumstantial evidence, under the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 807 (1973). Using the principles outlined in *McDonnell Douglas*, a plaintiff must first establish a prima facie case of disparate treatment discrimination by showing that: (1) he belongs to a protected class; (2) he was performing her job satisfactorily (or was qualified for a position for which he applied); (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside of his protected class were treated more favorably. *Chuang v. University of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281

United States District Court
Northern District of California

(9th Cir. 2000); *see Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002).[3] Employees "are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

If a plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  If the defendant does so, the plaintiff must demonstrate that the defendant's articulated reason is a pretext for unlawful discrimination "by either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Aragon*, 292 F.3d at 658–59 (internal quotations and citations omitted); *Godwin*, 150 F.3d at 1220.  To establish pretext, very little direct evidence of discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial."  *Id.* at 1222; *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006) (merely denying the credibility of defendant's proffered reason for the challenged employment action or relying solely plaintiff's subjective beliefs that the action was unnecessary are insufficient to show pretext); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) ("a plaintiff cannot defeat summary judgment simply by making out a prima facie case" to show pretext or "denying the credibility of the [defendant's] witnesses") (internal citations omitted) (alteration in original).

### a.     Prima Facie Case of Discrimination

Plaintiff asserts that he has met the prima face elements for discrimination because he has direct evidence that he was subjected to a "continuing pattern of hostility" to which similarly-situated, non-Filipino employees have not been subjected.   Opp. at 14.  He claims that Tunnell has not wrongfully terminated other non-Filipino employees after false charges of abuse, nor have non-Filipino employees been subjected to "negative and unfavorable conduct" in the form of

---

[3] The same burden-shifting analysis is applied in FEHA cases.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 354–55 (2000); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  California courts also look to federal anti-discrimination law as an aid in interpreting analogous state law provisions.  *Guz*, 24 Cal. 4th at 354

United States District Court
Northern District of California

United States District Court

Northern District of California

having seniority and vacation time taken away following reinstatement or being transferred to the day shift, depriving them of "differential pay and opportunity for overtime." *Id.* at 14–15.  Moreover, these employees do not have management personnel "stop[] speaking" to them or closely scrutinizing their work without justification.  *Id.*

Although Plaintiff characterizes his evidence as "direct evidence" of discrimination, these are conclusory allegations and *not specific facts* which, even drawing all inferences in Plaintiff's favor, prove discriminatory animus "without [requiring further] inference or presumption."  *Godwin*, 150 F.3d at 1221.  Plaintiff's "evidence" of discrimination lacks foundation and is nothing more than speculation that discrimination with respect to others similarly-situated has occurred.  Importantly, he provides no specific facts or evidence that similarly-situated individuals *outside of the protected class* were treated *more favorably* than he—*because of* his national origin.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5 (9th Cir. 2002) (granting summary judgment and noting that plaintiff's declaration that male employees in her position were punished less severely should have "indicate[d] how she knows this to be true").  Nor has he shown that the circumstances surrounding the alleged adverse actions should give rise to an inference of discrimination.  Indeed, his Opposition and Declaration do not supply any specific instances where a non-Filipino CNA was treated more favorably than he.  His declaration is substantively lacking at this, the summary judgment, stage.

Plaintiff's evidence of a "continuous pattern" of discrimination likewise cannot withstand summary judgment.  As a preliminary matter, Plaintiff's declaration contradicts his deposition testimony on a number of fronts.  For example, while Plaintiff asserts that he lost seniority upon reinstatement, he testified that co-workers were upset with him after he moved to the day shift because he was "number three in seniority," which forced less senior CNAs to move to other floors.[4]

---

[4] To the extent that Plaintiff claims his change to the day shift was an adverse employment action, the Court notes that Plaintiff testified that there was nothing "bad" about the day shift, but that it was undesirable to him because he is "not a morning person."  Mendoza Dep. 65:16–23.  In opposing summary judgment, he now claims that working the swing shift is "crucial" to his ability to assist his family.  Mendoza Decl. ¶ 34.  While Plaintiff indicates that recent events may have changed his family obligations (although the timing of this is vague), these statements—to the extent they do not contradict his prior testimony—are insufficient to create a triable issue that the prior decision regarding the shift change was *based on* discrimination.

*Compare* Mendoza Decl. ¶ 35 ("I have also lost my seniority") *with* Mendoza Dep. 59:16–60:8 ("I had higher seniority"). Plaintiff claims that he has been deprived of "differential pay," but previously testified that his pay rate was the same before his termination and after his reinstatement. *Compare* Mendoza Decl. ¶ 35 *with* Mendoza Dep. 70:15–71:3. As to overtime, Plaintiff testified that "they [Tunnell] don't really give [him] overtime" and "never ask [him]" if he wants overtime. But importantly, he cannot recall (or "forg[ets]") whether he has ever even requested overtime and been refused, and he has never been told he is not allowed to work overtime. Mendoza Dep. 71:4–72:16. The Court disregards these portions of Plaintiff's declaration as contradicting his prior deposition testimony.

As to Plaintiff's vacation, Defendant has explained that Plaintiff accrued less vacation time as of his reinstatement because a new hire date was entered into the payroll system. (Dkt. No. 39, Declaration of Cheryl Priddy in Support of Defendants' Motion for Summary Judgment ("Priddy Decl.") ¶¶ 3–5 & 7.) Defendant manually corrected this mistake and he now accrues vacation at the correct amount based on his 2002 hire date, including having access the vacation hours he should have accrued before the mistake was corrected. *Id.* ¶¶ 6–8. Further, the only person alleged to have discriminated against Plaintiff—Muriel Han—had no involvement with the entry of payroll information in the database that tracks vacation accrual. Han Decl. ¶ 22; *see* Priddy Decl. ¶¶ 2 & 7. In response, Plaintiff's sole evidence is that he only recently "received vacation credit to which [he was] entitled" and "Defendant delayed the correction of [his] vacation credit for more than one and one half years." Mendoza Decl. ¶¶ 35 & 43. Questioning the timing of the fix is not evidence that alleged discrimination based on national origin played any part with the mistake in the first place.

Plaintiff's other evidence of discrimination is that "Han does not speak. Since [my] reinstatement Han has ceased to greet or engage in ordinary conversation with me. She does, however, keep me under close scrutiny and interrogates me and criticizes me concerning aspects of my job duties which I have been performing excellently for several years." Mendoza Decl. ¶ 41; Opp. at 15. Although Plaintiff provides no specific instances in his Declaration or Opposition of how Han scrutinized, interrogated, or criticized him regarding his job duties, the Court notes that he previously

United States District Court

Northern District of California

testified that Han "was always checking on [him]" or "watching" him, and identified two times where Han asked (1) why a patient had not eaten yet, and (2) why a patient was not wearing socks. Mendoza Dep. 55:16–57:8; *see also id.* 104:24–105:21 (his supervisor Bautista constantly looks at what he does, but there is nothing inappropriate about her watching him).  Without more, this is insufficient evidence of discriminatory intent because national origin is not implicated, nor is there an adverse employment action.[5]  Moreover, Plaintiff accepted as a condition of his reinstatement that he would be moved to the day shift because more people would be on hand to support and supervise him. Mendoza Dep. 49:10–25 & 65:24–66:4; Faller Decl. ¶ 6.  While Plaintiff now seeks to dispute his acceptance by claiming that he was "compelled" to accept the conditions, which were "obviously unnecessary," the undisputed fact is that he accepted the condition because he wanted to return to work.  Mendoza Dep. 49:10–25.  Even assuming the conditions were "unnecessary," such conditions themselves are not sufficient evidence to create a material disputed fact.

Finally, even inferring in Plaintiff's favor that Han does not "speak" to Plaintiff and/or engages in ordinary conversation with other employees, this alone is insufficient to show discrimination.  Plaintiff does not identify who Han speaks to other than him, how often, what they discuss, nor does he identify the national origin of those employees—thus, he cannot show that similarly-situated employees outside of his class are treated more favorably than him.  *Cf. Lam v. City and County of San Francisco*, No. C 08–4702 PJH, 2012 WL 1253199, at *16 (N.D. Cal. Apr. 13, 2012) (granting summary judgment on discrimination, harassment, and retaliation claims, and finding that a supervisor's "mean demeanor" did not amount to verbal or physical conduct of a racial nature and "cannot be said to be evidence of any race based harassment").  While Plaintiff may be upset that Han does not speak to him, his vague and conclusory claim that she talks to everybody *but* him fails to show it was *because* he is Filipino.

It is undisputed that Han is the only person at Tunnell who Plaintiff claims discriminated against him.  Mendoza Dep. 55:11–15.  It is further undisputed that Han made no derogatory

_____

[5] An adverse employment action must materially affect the "terms, conditions, or privileges of employment." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005).

comments regarding Filipinos, never called Plaintiff any names, and that Plaintiff had no problems with Han prior to July 28.  *Id.* 38:24–39:1, 54:25–55:3 & 57:9–10.  In opposing summary judgment, Plaintiff's only evidence is that "management personnel" (presumably Han) stated that there were "too many Filipinos around here."  Opp. at 6; Mendoza Decl. ¶ 19.[6]  This statement is too vague to be considered direct evidence of discrimination because it is not tied directly to an adverse action.  *See Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1060 (N.D. Cal. 2011) (granting summary judgment and stating that "[w]here a comment is not directly tied to an adverse action, it cannot be considered direct evidence of discrimination.").  Indeed, Plaintiff has not identified when Han or "management personnel" made this statement, the context in which it arose, or how it relates to any specific action taken against him.  *See* Responsive Separate Statement at no. 10 (no evidence provided in disputing the fact that no one at Tunnell made any negative comments about Filipinos).

For these reasons, the Court finds that Plaintiff has not established a prima facie case because he has not provided evidence that he was subjected to any adverse employment action, nor that similarly-situated non-Filipino employees were treated more favorably.  *See, e.g.*, Mendoza Dep. 53:6–20 & 88:20–89:6.  The evidence presented in its totality does not create an inference of discrimination as it is based on nothing more than a series of bald conclusions that discrimination occurred.  Without establishing this inference of discrimination (let alone any discrimination linked to the purported adverse actions), Plaintiff's claims for discrimination based on national origin fail.

### b.    Plaintiff's Evidence of Pretext for Unlawful Discrimination

*Even if* the Court drew all inferences in Plaintiff's favor and found that Plaintiff has established a prima face case of discrimination, these claims would nonetheless fail under the *McDonnell Douglas* burden-shifting analysis.  Because Defendant has articulated legitimate, non-discriminatory reasons for the alleged adverse employment actions, Plaintiff must demonstrate the

---

[6] *See* Mendoza Dep. 54:11–24 ("A.  . . . She hired CNAs from other races because she said there were too many Filipinos, and she needed a translator for the floor; but she was disappointed because these workers of other races quit immediately.  Q.  She -- are you saying that she said she needed somebody who could speak the other languages that the patients spoke when you said translator?  A.  No, that there was just things that were being said at work.").

reasons are pretext for unlawful discrimination by showing that the non-discriminatory reasons are unworthy of credence. *Aragon*, 292 F.3d at 658–59; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–511 (1993) (presumption of discrimination "simply drops out of the picture" when defendant articulates legitimate, nondiscriminatory reasons).

In its Motion, Defendant provided its non-discriminatory explanations regarding: (a) Plaintiff's suspension; (b) termination; (c) move to the day shift; (d) overtime; and (e) vacation accrual. Mot. at 16–17. Tunnell suspended Plaintiff consistent with its policies, which provide that Defendant may suspend employees when abuse allegations have been made in order to conduct an investigation. Han Decl. ¶ 16; Mendoza Dep. 43:10–15, 92:5–17, 94:17–95:8, 95:16–96:10 & Exs. 10, 13 & 14 to Mendoza Dep. Suspending employees pending investigations of abuse serves the purpose of separating patients from their alleged abusers, and Tunnell had consistently suspended employees against whom abuse allegations had been made. Han Decl. ¶¶ 16 & 20; Mendoza Dep. 39:2–19. Plaintiff's termination resulted from Tunnell's investigation, which Han believed had substantiated the allegations made by the patient's wife, and also from Han reviewing Plaintiff's file and learning that he had previously been accused of slapping a patient, although that accusation was not substantiated because there were no witnesses. Han Decl. ¶¶ 17 & 19.[7]

Plaintiff's primary response[8] is that these reasons are untrustworthy and "must be rejected out of hand as a pretext" because he never abused any patient. Opp. at 16–17; *see, e.g.*, Mendoza Decl. ¶¶ 13–15, 17, 23–29. Even if the Court accepts Plaintiff's argument that Tunnell was unreasonable in

---

[7] The Court has already addressed Plaintiff's non-discriminatory reasons for Plaintiff's move to the day shift, overtime, and vacation accrual. Defendant has provided declarations from Tunnell management regarding the intent behind moving Plaintiff to the day shift—namely that more people would be on hand to support and supervise him, which is consistent with the reasons explained to Plaintiff upon his reinstatement. As to overtime, Plaintiff has not been prohibited from working overtime, has never been told he cannot earn overtime, and, more importantly, has not specifically requested any overtime and cannot recall ever being refused overtime since his reinstatement. As to the vacation accrual, Defendant has explained that the lower accrual resulted from Plaintiff's changed hire date in the payroll system upon reinstatement, which was inadvertent and has been corrected, and he has been given retroactive access to the hours he accrued. *See* Section II.C.2.a.

[8] Plaintiff also pointed out that Defendant "neglect[ed]" to address the issue of "denial of time differential pay" (Opp. at 16), but the Court has already explained that this claim contradicts Plaintiff's deposition testimony. *Compare* Mendoza Decl. ¶ 34 *with* Mendoza Dep. 70:15–71:3.

United States District Court

Northern District of California

concluding that the allegations against Plaintiff were substantiated, it does not automatically follow that their reasons are pretext *for discrimination*. *Cornwell*, 439 F.3d at 1028 n.6 (plaintiff's subjective beliefs that the employment action was unnecessary or unwarranted are insufficient to overcome a legitimate, non-discriminatory reason). Plaintiff must still show that national origin was more likely Tunnell's motivation for its conduct. Rather than providing evidence, Plaintiff again concludes that there is such pretext, that the abuse never occurred, and that Defendant had no reasonable basis to believe the abuse did occur. However, Plaintiff himself recognizes the importance of protecting patients when an accusation of abuse has been made. Mendoza Dep. 39:2–19 & 54:5–10. During his employment, Plaintiff received documents and training regarding reporting patient abuse (*see, e.g.*, Mendoza Dep. 43:10–15, 92:5–17, 94:17–95:8, 95:16–96:10 & Exs. 10, 13 & 14 to Mendoza Dep.) and generally understood that abuse was prohibited and that Tunnell would act upon allegations of abuse to protect patients. Plaintiff had also been suspended in the past when *allegations* were made *before* Han joined Tunnell. *Id.* 80:12–20; Bautista Decl. ¶ 4. Plaintiff also confirms that Tunnell management cared about making sure patients were treated properly. Mendoza Dep. 43:16–19.

It is further undisputed that Shirley Faller, the Director of Clinical Operations, recommended that Plaintiff be reinstated to the day shift because that shift has more managerial and supervisory coverage, which allows Tunnell to better supervise and support employees. Faller Decl. ¶ 6. Han approved his reinstatement based on her staff's recommendation and Plaintiff's acceptance of the shift change. Han Decl. ¶ 22. Plaintiff was informed of his condition prior to reinstatement and accepted it, even though he may have believed it was unnecessary. Mendoza Dep. 49:10–25. Plaintiff also admits that Tunnell has terminated other employees upon substantiating allegations of abuse, including one non-Filipino employee. *Id.* at 88:20–89:6; *see id.* 53:6–20 (Plaintiff "wonder[ed]" whether he was the first Filipino to be terminated by Han, but does not know).

Plaintiff discussed at length the events of July and August 2010 in his deposition, consistently denying having abused patients. He did not assert that the July 28 complaint was completely fabricated. *See* Mendoza Decl. ¶¶ 6 & 20; Opp. at 5 & 7; *see Villiarimo*, 281 F.3d at 1063 (in challenging proffered justifications, "it is not important whether they were *objectively* false," but

United States District Court

Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

courts only require that an employer honestly believe its reason for its actions). Aside from being inconsistent with his deposition, Plaintiff has provided no competent evidence challenging that the complaint occurred. To the contrary, Plaintiff admits that his photo was taken as part of the investigation. Plaintiff simply urges the Court to deny summary judgment because he speculates that discrimination occurred.

The fundamental inquiry is whether Plaintiff has provided specific and substantial evidence showing that Defendant's reasons are unworthy of credence. *Guz*, 24 Cal. 4th at 358 ("[I]f nondiscriminatory, [a defendant's] true reasons need not necessarily have been wise or correct. . . . [T]he ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*."). Plaintiff has not shown that Defendant was more likely motivated by discrimination than legitimate business reasons. *Id.* (affirming grant of summary judgment where employee failed to establish pretext). Without evidence sufficient to overcome Tunnell's non-discriminatory reasons for the alleged wrongful actions taken against Plaintiff, his claims for discrimination must fail.

Because of this failure and his inability to establish a prima face case with specific factual evidence, the Court **GRANTS** Defendant's Motion for Summary Judgment on the first and fifth claims for discrimination based on national origin.

### 3.     Retaliation Under Title VII and FEHA (Second and Sixth Claims)

Defendant contends that Plaintiff cannot establish his prima facie retaliation claims because the retaliatory acts (suspension, termination, and reinstatement) did not occur until months after the complaint of discrimination in November 2010. Mot. at 13. Further, Defendant argues that Plaintiff's claim that Han has been questioning or closely monitoring him since his reinstatement does not qualify as an "adverse employment action" because it does not materially impact his employment. *Id.* at 14. Acknowledging that a retaliation claim does require that a protected activity precede adverse employment actions, Plaintiff asserts that he engaged in "protected activity" by protesting both the abuse accusation in July 2010 and his suspension. Opp. at 15–16.

A plaintiff can establish a prima facie case of retaliation by showing that: (1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link

United States District Court
Northern District of California

between the protected activity and the adverse employment decision. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Yanowitz*, 36 Cal. 4th at 1042.  An employee has engaged in a protected activity if he opposed discrimination or other conduct made unlawful by Title VII or FEHA. 42 U.S.C. § 2000e-3(a); Cal. Gov. Code § 12940(h).  An employee's comments, when read in their totality, must oppose discrimination. *Yanowitz,* 36 Cal. 4th at 1047.  On the other hand, "an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct . . . where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination." *Id.* at 1046.  Moreover, "complaints about personal grievances or vague or conclusory remarks that fail to put employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." *Id.* at 1047; *see Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (causation element requires evidence that "employer was aware that the plaintiff had engaged in the protected activity").

Plaintiff is mistaken in asserting that "protesting" both the abuse accusation or suspension as unfair or incorrect satisfies the requirement that he engage in a protected activity under Title VII or FEHA.  The Court cannot assume that Plaintiff protested discrimination by denying abusing a patient. *See* Mendoza Dep. 34:22–36:8 & Ex. 2 to Mendoza Dep.  Plaintiff has provided this Court with no evidence (via deposition testimony or otherwise) that he raised an issue of discrimination or other unlawful activity in July or August 2010.  By contrast, Plaintiff's deposition testimony does support the conclusion that Defendant did not receive notice of Plaintiff's claim of discrimination until the EEOC Charge in November.  Mendoza Dep. 90:17–91:2 (answering that he did not ever complain of unfair treatment because of being Filipino to company until EEOC Charge).  Defendant cannot be charged with retaliation against Plaintiff by suspending or terminating him based on an EEOC Charge filed months later.

*Even if*, as Plaintiff argues, Han stopped speaking to Plaintiff and placed him under close scrutiny after the EEOC Charge (*see* Opp. at 16), these actions cannot be adverse employment actions.  "Minor or relatively trivial adverse actions" are not actionable. *Yanowitz*, 36 Cal. 4th at

18

1054; *Cozzi*, 787 F. Supp. 2d at 1066 (Title VII adverse actions may lie where the action "dissuade[s] a reasonable worker from making or supporting a charge of discrimination") (internal citation omitted).  Plaintiff has identified two times where Han questioned his patient care, and generally asserts Han and Bautista watched him.  These instances, however, cannot be said to have dissuaded Plaintiff or any other reasonable employee from making a discrimination charge, or to have materially affected the terms, conditions, or privileges of employment.  *Yanowitz*, 36 Cal. 4th at 1051–52.

Because Plaintiff has failed to provide evidence sufficient to establish his prima face case of retaliation, namely that he engaged in a protected activity prior to his EEOC Charge or that he suffered any adverse employment action thereafter, the Court **GRANTS** Defendant's Motion for Summary Judgment as to the second and sixth claims for retaliation.

### 4.    Harassment (Third and Ninth [*sic*] Claims)

Defendant contends that Plaintiff's claims of harassment fail because: (1) he cannot show that any of the "harassing" conduct was based on his national origin; (2) the conduct was not "severe or pervasive" enough to create a hostile work environment; and (3) personnel management actions cannot form the basis of a harassment claim.  Mot. at 20–21.  Plaintiff argues that the scope of harassment consisted of Han initiating and maintaining a "climate of hostility. . . beginning in early 2010 which culminated in his being, without cause or justification, suspended from employment on July 28, 2010" and thereafter being terminated.  Opp. at 18.  After his reinstatement, he was subjected to continuing hostile conduct, including management personnel refusing to speak to him and "constant over scrutiny."  *Id.*  Regarding whether personnel management actions can be the basis of a harassment claim, Plaintiff states that "[e]mployees are required to be treated with dignity and respect."  *Id.*

To prevail on his harassment claims, Plaintiff must show that: (1) he was subjected to verbal or physical conduct because of his national origin; (2) the conduct was "unwelcome"; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."  *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (citing *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998)).  To determine whether

United States District Court

Northern District of California

conduct is sufficiently severe or pervasive to violate Title VII, the court looks at all surrounding circumstances, including frequency, severity, whether the alleged conduct is threatening or humiliating, or merely an offensive utterance, and whether it interferes with an employee's work performance.[9]  *See, e.g., Vasquez*, 349 F.3d at 649; *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (no recovery for harassment that is "occasional, isolated, sporadic, or trivial") (internal citations omitted); *Etter*, 67 Cal. App. 4th at 462 (plaintiff may prevail on harassment claim "when the employer has created a working environment heavily charged with ethnic or racial insult and ridicule").  The court must assess "allegations of a racially hostile workplace . . . from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff."  *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004).

Plaintiff's harassment claims fail for the same reasons that his discrimination and retaliation claims do—a lack of specific evidence, other than speculation or conclusions or denials of Defendant's evidence, in support of his claims.  Here, Plaintiff summarily concludes that his work environment is so hostile and pervasive that it has materially altered the terms and conditions of his employment, but he has failed to provide any evidence of how this is so.  Moreover, Plaintiff reverts to arguing that the suspension and termination were "without cause or justification," but in doing so, fails to show that either decision was motivated *by his national origin*.  Defendant identified specific deposition testimony where Plaintiff admitted that no one at Tunnell made any negative or derogatory comments about Filipinos, to which Plaintiff failed to pinpoint a single piece of evidence in response.  *See* Responsive Separate Statement at no. 10.  Based on the evidence that Plaintiff has provided in his Declaration, the Court cannot conclude that a *reasonable employee* of Filipino national origin would have perceived Defendant's (or Han's) conduct as hostile or abusive toward Filipinos.

Moreover, while the Court has already addressed the issue of Han not speaking to Plaintiff, it notes that Title VII and FEHA are not "general civility code[s]" in the workplace.  *Manatt v. Bank of*

---

[9] California courts also apply federal decisions interpreting Title VII to analyze FEHA national origin harassment claims.  *Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 464 (Cal. Ct. App. 1998).

United States District Court
Northern District of California

*America, N.A.*, 339 F.3d 792, 798 (9th Cir. 2003) (affirming grant of summary judgment to employer on harassment and retaliation claims); *see Cozzi*, 787 F. Supp. 2d at 1070–72 (granting summary judgment on harassment claim where plaintiff's only evidence was her own declaration, in which she stated that other employees were treated with "dignity and respect," and otherwise failed to show that she was targeted *because of* her age). To the extent that the alleged harassment consisted of bias that created an intolerable "social environment" (properly a harassment claim), as opposed to biased personnel management decisions (which are actionable as discrimination), Plaintiff has failed to establish that any alleged actionable "harassment" was based on his national origin, let alone severe or pervasive. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706–708 (2009).

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to the third and ninth [*sic*] claims for harassment.

### 5.      Violation of 42 U.S.C. Section 1981 (Fourth Claim)

Defendant contends that summary judgment must be granted on Plaintiff's claim under 42 U.S.C. section 1981 ("Section 1981") for the same reasons as his discrimination and harassment claims. Mot. at 15 (cannot overcome Defendant's legitimate, non-discriminatory business reasons) & 20 (Plaintiff's Title VII harassment claim is also actionable under Section 1981).

Section 1981 prohibits discrimination in the "benefits, privileges, terms and conditions" of the contractual relationship. 42 U.S.C. § 1981(b). At-will employment can serve as the predicate contract for a discrimination claim under Section 1981. *Skinner v. Maritz, Inc.*, 253 F.3d 337, 340 (8th Cir. 2001); *Lauture v. Int'l Business Machines Corp.*, 216 F.3d 258, 262–63 (2d Cir. 2000). In analyzing an employment discrimination claim under Section 1981 and a Title VII disparate treatment case, "both require proof of discriminatory treatment and the same set of facts can give rise to both claims." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). As such, the same legal principles apply to Section 1981 as with Title VII disparate treatment cases. *Surrell*, 518 F.3d at 1103 & 1105 (including *McDonnell Douglas* burden-shifting framework).

Plaintiff's Section 1981 claim must be **DISMISSED** for the same reasons as the underlying Title VII and FEHA claims. Accordingly, the Court **GRANTS** the Motion for Summary Judgment as to the

1   fourth claim.

### 6.   Punitive Damages

Because Plaintiff has failed to establish his claims of discrimination, retaliation, and harassment, his claim for punitive damages cannot survive summary judgment either. *See* 42 U.S.C. § 1981a(b)(1) (employee must demonstrate employer engaged in "discriminatory practice . . . with malice or with reckless disregard" to recover punitive damages). The Court hereby **GRANTS** Defendant's Motion for Summary Judgment as to the claim for punitive damages.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. This Order terminates Dkt. No. 33.

Defendants are hereby **ORDERED** to submit a proposed judgment consistent with this Order. A compliance hearing regarding the filing of a proposed judgment shall be held on Friday, June 29, 2012 on the Court's 9:01 a.m. calendar, in the Federal Courthouse, 1301 Clay Street, Oakland, California, in a courtroom to be designated. If a proposed judgment has not been filed by five (5) business days prior to the compliance hearing, Defendants shall file a one-page statement setting forth an explanation for their failure to comply. If compliance is complete, the hearing will be taken off calendar. If compliance is not complete, the parties may be required to appear.

**IT IS SO ORDERED.**

Dated: June 5, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California